Good morning, your honors. I'm Karen Bucher for David Garrison. With court's permission, I'd like to reserve five minutes for rebuttal. Sure. Mr. Garrison is a physician assistant, and he was convicted of Medicare fraud. And in his appeal, he makes two arguments. First, that there's insufficient evidence for his conviction for Medicare fraud. And the second, that the district court erred by enhancing his sentence by two levels for abuse of physician of trust. The insufficiency of evidence argument is very focused. He argues that the government did not present sufficient evidence to prove beyond a reasonable doubt that he had a specific intent to defraud Medicare. The only witness that could testify to his intent and knowledge was Armin Shigoin, who testified that he was a physician's assistant, that he worked there and he wrote prescriptions, but that he did not tell Mr. Garrison what was going on. He didn't hide it, but he was clear he did not talk to Mr. Garrison about the nature of the business. Let me, as I understand, the evidence showed, and I'm obviously giving a quick and dirty summary of it, but that he wrote unjustified prescriptions for these scooters and wheelchairs, knowing that they would be sent to a medical supply place that would then bill Medicare. I agree with the first two, Honor, but not with the third. There is nothing in the record that shows that he knew that eventually those prescriptions would end up at Medicare. I thought they were on HCFA form. Some of them were on HCFA form. There was the one form. When you look at it, it doesn't say anything about Medicare at all. It was just like a generic dynastic form where the doctor circles. I thought I read somewhere in the record that some of these forms actually made reference to the Health Care Financing Administration, which is the arm of Medicare that receives and pays health care claims. The two forms I'm referring to are the ones that were submitted to this court. Is there no such evidence in the record? Is that what you're saying? I did not see that standing here. We can ask government counsel if you're not aware of it. Are you saying that this guy who's practiced as a physician's assistant for how many years in the profession has no clue that Medicare is paying for any of the patients that he's writing prescriptions for? That might be true, but the record doesn't support that. That's my point. That could be true, but the record does not support that he had knowledge himself by reading the record that he knew. Well, if the record shows that he signed forms knowing that they would be given to the Durable Medical Equipment Supply Company and that he was essentially standing in the shoes of some of these physicians, can't the jury make an obvious inference that the defendant knew that the federal government was underwriting the cost of some, if not all, of these claims? I think that's too much of a leap. They could say it's possible, it's probable, but it was imprudent. Didn't the jury hear testimony from a special agent from Health and Human Services as to what this case was all about? Yes, they did, Your Honor. And he or she talked about, you know, I investigate health care fraud and this is how claims are submitted and this is how they get paid and this is why we have to rely on the professionalism and the integrity of the health care professionals to certify that there's a true diagnosis here that requires this kind of assistive device. Didn't the jury hear all that stuff? The jury did, but Agent Coons, I believe that's who you're referring to, was testifying to the case as a whole. So then the jury hears the evidence with regard to what Mr. Garrison did and I go back to my question, why can't a reasonable jury applying the Jackson versus Virginia standard conclude that your client must have known that he was defrauding Medicare in doing what he did in playing his role in the scheme? Because there is nothing in the record to support that leap. Well, you keep saying that, but then you concede that all this stuff is in the record. I think what we're really arguing about is whether or not that's a reasonable inference that the jury could make as to what was in your client's mind at the time he acted. Isn't that what this appeal is all about? I think that he was acting wrongly. I think he knew something. I mean, the record shows at a minimum he did write too many prescriptions and they weren't supported. I admit all that. Well, he used the same diagnosis that was part of the problem, right? And there are very few, if any, contemporaneous notes as to the symptoms that would support that diagnosis. But my argument is there's nothing in the record that he personally made that showed that there was a connection that he knew that eventually after those prescriptions left and which he never saw, eventually made it to Medicare. Why couldn't the jury say we know that he must have known that these bogus prescriptions were going to get filled and paid by somebody other than these bogus patients? So it would either be an insurance company or it would be Medicare. Right. It could have been an insurance company, and that's what he might have thought. But that's not what he was charged with. He was charged with defrauding Medicare. Okay, but if one of the victims is Medicare, why isn't that sufficient? If he knew it was going to be paid by someone and if it turns out it's paid by Medicare and he knows they're going to be falsely paid, why isn't that enough? Because the indictment charged him with defrauding Medicare. Well, and that's exactly what he did. But the record doesn't show that he knew he was defrauding Medicare. He was defrauding someone. There was something going on. If your argument is correct, then no one could ever be convicted absent either an admission by the defendant that he knew. I mean, how else does the jury get into the head of the defendant in establishing wrongful intent here? Well, for example, in this case, had Mr. Garrison actually known, Mr. Chicoine would have testified to that. He took great pains. The agent can't, or Chicoine can't testify as to what your client knew unless your client said he knew. Or if he discussed it with Mr. Garrison. But that isn't the law. The problem I'm having with your argument is you're basically saying that a jury, in the face of all this evidence, that no rational jury could reasonably make the inference that he must have known based on all of the evidence of the way that these storefront clinics operate. That's essentially what you're saying. Absent an admission from your client, either to somebody else that he was conspiring with who then testified against him at trial, a confession that he makes to the agents when they come to investigate. Otherwise, we'd have to declare as a matter of law you could never be guilty of wrongful conduct. Well, it's our position that the evidence that's presented in this record does not prove beyond reasonable doubt that he knew after those prescriptions left exactly where it went. It went somewhere. He can just throw out a whole bunch of bogus prescriptions and you say, if they land in Medicare, that's just not my problem. I don't think that's what the record shows at all. But that's what you would argue, right? I mean, that's your view. My view is that the record does not show, it does not prove beyond a reasonable doubt he knew where those prescriptions were going. So you agree he can just toss out prescriptions knowing they're false and if they get paid by Medicare, well, that's just too bad. He didn't have knowledge. I don't think he would think that. I don't think he would have knowledge. Go ahead. Go ahead. So what case can you cite that's the strongest support for your argument that under the facts of this case there was insufficient evidence of knowledge? What's the strongest case authority you have for that proposition? No, there isn't a case on point. And I had trouble with that. The cases that I did come up with, the Ninth Circuit cases, U.S. v. Deering, where the defendant had opened up a mental health clinic and he was involved with the billing and he designed the billing so he knew that Medicare was being defrauded. The other cases that I cited also involved doctors who devised the billing scheme. But he signed prescriptions on behalf of doctors, falsely, without authorization of law. Yes, that's true. But why don't those cases dealing with doctors who sign prescriptions based on false diagnoses for durable medical equipment that the patient doesn't need apply in this instance when he was representing himself to be a doctor? Because they were Medicare providers. They had a duty. The cases that I cited in my... But he's impersonating a doctor who is otherwise an authorized provider of Medicare-covered services, is he not? I don't think that came out in the record that those doctors were Medicare. So the agent never testified that we have to rely on the physician because there has to be a medical necessity shown for the durable equipment? That is a truth. Well, I know that to be true. The question is, is it in the record? And if it's in the record, why isn't that enough so that the jury could say, on these ten occasions when Mr. Garrison falsely signed prescriptions as if he were a doctor rather than a physician's assistant, then we infer that he knew that Medicare was going to be defrauded. So the position is the same, that even though he signed off on those prescriptions, there's nothing in the record that shows that he had knowledge that those providers were Medicare providers. I wonder if we could switch gears for a second and talk about the sentencing enhancement. Yes. Your guy got a two-level bump because the judge found that he abused a position of trust. Is that right? That's right. And it doesn't apply because there's no trust relationship between Mr. Garrison and the victim. The victim is Medicare. And the Ninth Circuit law provides that the abuse of trust enhancement can only be applied when the defendant abused a trust with the victim of the charged offense. The victim here is Medicare. Mr. Garrison did not have a trust relationship with Medicare at all. What about if the defendant uses specialized services so that it makes it more difficult to detect the crime? Is that part of the abuse of trust? That's the second problem. I believe that's the second problem. You have to get to the first. Did he abuse a position of trust? And if the answer is yes, then you move to, was that a specialized talent that makes it difficult to detect a wrong? But in this case, he does not have a trust relationship with the government. And the case that I cited is an unpublished case. It's Hughes v. Evans. The defendant was a tax preparer, or he helped people prepare false income tax returns. He had these trusts that reduced income. And he received that two-level bump. And this court said that because he didn't have a trust relationship with the IRS, the federal government, it didn't apply. What about Ruttgard? I'm sorry? United States v. Ruttgard. That's the one where the ophthalmologist got the two-level bump. Yes, he was a Medicare provider, as far as I can remember from the case. These cases that I cited were actually cited by the government, I think, in footnote 18. It's been applied. The distinction between Ruttgard and our case is what? Ruttgard? Well, you tell me. Well, in record, it was affirmed because he had a position of trust with the government because he was a provider. He was a doctor. I mean, you signed documents with Medicare. You promised to do XYZ. And so you are in a position with trust because you made that agreement. And this case, Mr. Garrison, and also with Mr. Evans, there was no agreement, no trust relationship whatsoever. The difference in Ruttgard is that he was a doctor with an agreement. So going back to my question about impersonating the doctor who is otherwise in the same shoes as Dr. Ruttgard, suppose Mr. Garrison had worked for Dr. Ruttgard and had used Dr. Ruttgard's prescriptions, falsifying them, and then Ruttgard's clinic submitted the bills to Medicare. Would your position be you could get Ruttgard but you couldn't get Garrison? Well, he might not be able to get Ruttgard because he would have no knowledge of it. No, no, no. We're not talking knowledge here. I'm just talking agency law and aiding and abetting and false impersonation. Mr. Garrison would not have a trust relationship with the government even in that instance because it has to be established. Even if he was representing himself to be Dr. Ruttgard? Yes. Okay. Counsel, do you have guideline 3B1.3 in front of you? No, I don't, Your Honor. It appears to say if the defendant abused a position of public or private trust or used a special skill. So if I represent to you that that's what that says, would your answer to my question change? No, Your Honor, I would have to think about that because I did a lot of research on the cases I did read. First, you've got to find was there a position of trust was abused? And then from that point forward, was there a special skill? If I misread that, then I apologize, Your Honor. I see you have about a minute and a half left. Thank you. Thank you. Thank you. Good morning. Good morning. May it please the Court, James Pierce for the United States. Defendant David Garrison knowingly defrauded Medicare when he wrote unnecessary power wheelchairs for Medicare beneficiaries who did not need them and in many cases did not use them. Okay, we know he wrote the prescriptions, and we know that there was no medical justification and that the equipment was not otherwise subject to reimbursement for that reason, but what evidence do you have to show that he actually knew that the claims were going to be submitted and paid by Medicare? Judge Talman, there are a couple of places in the record where that shows up. Admittedly, it's not through Armin Shugoyan. Armin Shugoyan certainly shows that he knows about the fraud, but he doesn't say and he knew it was towards Medicare. The places to look, and some of this is cited in the government's brief, Exhibits 48 and 49 are prescriptions for Mariano and Teresa Alvarez. On page 21 of those exhibits. Where is that in the excerpts of record? What page on the excerpts of record? There is a stipulation at page 128 and 129 that Garrison wrote those exhibits, and it refers to the power wheelchair prescription that is page 21 of that specific exhibit. But where can I go in the excerpts of record to find the actual prescription that you're describing? That's not in the excerpts of record. The exhibits are not there. The exhibits are not, and in fact, a request came from this court as we were preparing for those exhibits. I had thought, I didn't argue this case, handle this case below that those were by nature kept with the district court. We then sent those exhibits to this court so that it's on hand now. Why don't you guys routinely do that in these cases that are so evidence specific? I mean, some of the best evidence in the case we never see on appeal unless we ask for it. And that's my apology. I don't practice in this district. I thought this was on hand, but you're right. Perhaps when we cite two exhibits, it would be more helpful to send them. I'm pressing you, but it's a complaint. It's a complaint. Well, it's a complaint I have with both sides. I mean, I cannot tell you how often, particularly in a sufficiency of the evidence challenge, counsel rely entirely on the transcript of the trial as if that contains everything that the jury considered. And yet, if you marked it as an exhibit and introduced it into evidence, you must have thought it was important to the case, whether for the prosecution or for the defense, but you don't routinely include it in the excerpts of record, and you don't make arrangements to send it up with the portions of the transcript that you send us. And maybe I'll save it for my CLE comments the next time. I think that would be useful. It's one of my pet peeves in this job. I think that's the assumption. The Court has it, but obviously that's not a wise assumption to offer. It's not an assumption you should make. Right. Those exhibits that the Court should have had on hand and that the government should have provided show that the, again, this is page 21 of exhibits 48 and 49, Maria and Teresa Alvarez, Mariano and Teresa Alvarez, excuse me. They show the Medicare, the power wheelchair that is to be billed, that is to be sent to the supply company, what the supply company charges for it, and what Medicare allows for it. And this was evidence, again, that the jury saw and, as Judge Sheldon said, took back and considered with it. And David Garrison signed that form. He stipulated to that. It was in the name of Dr. Matthew Gutierrez, a doctor with whom he had no delegation of services agreement, but he signed that very form. Is that what is described in the record as a Medicare super bill? No, Judge Rawlinson, that's something else. Is there a Medicare super bill in the record that we can look at? There are, and those, again, were submitted to the Court at the Court's request. Those are at pages 62 to, I'm sorry, exhibits 62 to 71. I'll be clear, and this is a point that is made in the reply brief. The bill itself doesn't say Medicare on it. But there was testimony from Dr. Matthew Gutierrez, this is at page 114 and 115 of the excerpt of record, that said this is a Medicare super bill. And to one of the questions raised by the panel earlier to my co-counsel, David Garrison is a positions assistant with some years of experience. The jury certainly could have inferred, using the testimony from Dr. Matthew Gutierrez, that he knew that what he was signing was a Medicare super bill. I wanted to ask you about, did Garrison have an agreement with Medicare? There is nothing in the record to suggest that he did. He was not a Medicare provider. But to be a Medicare provider, one signs a form that says he or she will comply with Medicare rules and requirements and knows what those requirements are. What is in the record, and this is at page 25 of the government's selected excerpts of record, is a statement in response to a question from FBI agent Doris Webster about Garrison's own knowledge of Medicare's power wheelchair requirements. Webster asks, are you familiar with Medicare's power wheelchair requirements? Garrison says, for the most part, yes. What I was getting to another point, Ms. Bucher makes the argument that because he was not a Medicare provider, his sentence shouldn't have been enhanced because he didn't abuse a position of trust vis-à-vis Medicare. What's your answer to that? And this is to the sentencing point. First of all, I would start by relying on the point that Judge Rawlinson made about you can either go through special skills or through abuse of trust. Your question gets to the other. Let's stop there. The district judge didn't use the special skills. That's correct. The district judge used the abuse of trust. That's correct. So let's stick with that for the time being. Okay. Rutgerd in the — and Rutgerd is the important case here. Rutgerd, in the discussion of the sufficiency of the evidence, did note that the doctor in that case was a Medicare provider. But when it got around to the discussion of the sentencing enhancement, it simply says it's appropriate here because of the nature of the trust relationship between the medical professional, between the doctor and the position. In that case, he did have a special relationship. He had a contractual relationship with Medicare. This is true. And now, in our case, our guy doesn't have a contractual relationship with Medicare. So why isn't this just an arm's length fraud instead of some kind of breach of trust? For the reasons that Judge Tallman alluded to earlier, which is that in essence, first of all, in essence, Garrison is standing in the place of these doctors and on the clinic as a whole by representing himself as having the authority to issue prescriptions, valid, seemingly valid prescriptions that would go to Medicare and then would result in the issuance of a power wheelchair. And, in fact, out of the case — But that abuses his position vis-a-vis the doctor, perhaps. How does it abuse his position vis-a-vis Medicare? Because Medicare, and there was testimony, it's at page 179 of the excerpt of record, relies on the representations made by the medical professionals as to the validity — That makes it fraudulent. That's right. How does it then become also, in addition to being just a crime, how does that also become some kind of super-duper fraud instead of just ordinary arm's length fraud? The argument isn't that it's super-duper fraud. It's simply that Garrison was standing in the shoes of the doctor — We understand that. I mean, but that doesn't really answer the point that, just like the accountant doesn't get the bump up if he engages in fraud on a tax return because he doesn't have a special position of trust with the government. He has a position of trust with the client. I don't understand if your guy doesn't have a contract with the government. I understand he has a position of trust with the patient, but where does he have a position of trust with the government if he doesn't have a contract with the government? Again, Rutgard and the cases from other circuits have basically said that the nature of the trust relationship — You don't look at it from the perspective of the government.  The case Technic Services says you look at it from the perspective of the government. That's correct, but the Technic Services was a case involving someone who was the head of an asbestos firm. And Rutgard — But the point is Rutgard is focused, as we are here, on sort of the specific set of facts involved in Medicare fraud when there's fraud where you've got fraud in this doctor-patient or medical-professional-patient relationship, and the ultimate victim is a third party like Medicare. But I would say, even if this Court were unpersuaded by the abuse of trust rationale, the special skills is an alternative. It's not — you don't have to get under 3B1.3. The plain text of the sentencing guideline is clear. You can look at whether the defendant had special skills, which includes — Well, who looks at it? I mean, the district judge didn't choose to look at it that way. You know, if the judge said there's abuse of trust or any alternative special skills, okay, I kind of get your argument. But if the judge puts all the eggs in the basket of abuse of trust, I don't see where it's our place to second-guess. There might be some other thing that applies. Well, nothing precludes this Court, as it's done in a number of cases, from affirming for any basis that appears in the record. And it's not as though I'm up here arguing, you know, well, maybe not abuse of trust, but how about throwing in an obstruction of justice or some other — This is the very same sentencing guideline driving at the very same type of conduct that just happened to be two different ways, abuse of trust or use of specialized skills. It's true the government below didn't use the specialized skills rationale. The district court didn't specifically refer to it. But nothing precludes this Court under a number of cases — U.S. v. Campbell is one of them, 291 F. 3rd, 1169, a 2002 Ninth Circuit case — from applying that same analogy. Even if we could do that, why wouldn't the more prudent course be to remand and let the judge rethink the sentence? Well, our argument to that is that even if this Court were to find that there were error, that the sentence would be the very same one that Garrison got. How do we know that? Well, there is not the magic word that sometimes appears where a district court says, and I would have given this very same sentence even if I committed sentencing error. But what there was was a fairly thorough consideration of the sentencing factors. There was discussion of the severity of the offense, concerns about deterrence, all of the 3553A factors, and most importantly, 3553A6, which is the consideration of sentencing disparity. Garrison got a 39-month downward variance from the very low end of his sentencing guidelines. And what the district court judge did was refer to two of the other co-defendants in the scheme, Carolyn Vasquez, the business manager, who had a 60-month sentence, and Edward Aslanian, seemingly the head of the, he had owned the clinics and was the one who was the mastermind of the Medicare scheme. And he had 77 months, and it seemed apparent from the sentencing transcript that what the judge thought was appropriate was to have Garrison, who received a 72-month sentence, get less than Aslanian as the mastermind, but more than Vasquez, who had accepted, who had pled guilty and not gone to trial. And, again, looking, as this Court does, at the entire rationale given by the district court under 3553A, that is a sentence that ought to be upheld by this Court because it satisfies those factors. Unless the Court has other questions on the sufficiency of sentencing, I'll yield the rest of my time. Thank you, Mr. Pearson. Thank you. I've got about a minute and a half left. Just one point, Your Honors. It doesn't matter whether Mr. Garrison got a good sentence or not. It wasn't harmless because the district court's decision didn't flow from the correct guidelines range to start off with. She might have sentenced Mr. Garrison to even a lower sentence had the guidelines range had been correct. So if you're right about this, what would you have us do? We'd be on for resentencing and have the district court decide whether or not that enhancement applies. So, counsel, it was apparent that the court thought the enhancement applied. Absolutely, Your Honor. It just was that the court articulated under one prong of the guideline as opposed to a different prong of the guideline. That's correct, Your Honor. What the district court said is that the defendant submitted false prescriptions without supporting medical evidence, and that was abuse of position of trust, and that's at ER 16. And was there an objection made to that finding by the defense counsel at sentencing? This was sort of a surprise. The answer, no. So when the court says there's a legal reason why I should not impose sentence, did counsel say, well, Your Honor, the basis for the enhancement is incorrect? On my notes here, when they were discussing this abuse of position of trust issue, on ER 14 to 15, there was some sort of discussion by defense counsel not wanting the enhancement, but I can't articulate exactly what the reason was. My recollection is the pre-sentence report did not recommend that. Correct, Your Honor. And the government argued for it. That's correct, Your Honor. And your side opposed it, is what I recall. I'm sure that they did. I don't have the sentencing memorandum in my mind. Okay. Well, we can check. Okay. Thank you. Thank you very much. Mr. Pierce, thank you, too. The case does start. You just submit it.
judges: SILVERMAN, TALLMAN, RAWLINSON